# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE, AT NASHVILLE

| | |
|---|---|
| B&P GLASS AND MIRROR, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. _____ |
| | ) |
| CLOZETIVITY FRANCHISING, LLC | ) |
| LEIBY GOLDBERGER, and CURT | ) |
| SWANSON, | ) |
| | ) |
| Defendants. | ) |

_____

## COMPLAINT
_____

Comes the Plaintiff, B&P Glass and Mirror, LLC, by and through counsel, and for Complaint against the Defendants Clozetivity Franchising, LLC, Leiby Goldberger and Curt Swanson, hereby states as follows:

### I. PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, B&P Glass and Mirror, LLC (herein after "B&P"), is a Kentucky limited liability company with its principal office at 1500 Kenton Street, Bowling Green, Kentucky 42101.

2. Defendant, Clozetivity Franchising, LLC (herein after "Clozetivity"), is a Tennessee corporation with its principal office located at 3212 West End Avenue, Suite 201, Nashville, Tennessee. A copy of the Filing Information of the Tennessee Secretary of State, Division of Business Services as of the date of the filing of this Complaint is attached as <u>Exhibit 1</u>.

3. Defendant Leiby Goldberger is a resident of the State of New Jersey and can be served with process at 1378 Cabernet Court, Toms River, New Jersey 08753. Mr. Goldberger is one of three members of Clozetivity. This Court has personal jurisdiction over Mr. Goldberger because he has sufficient minimum contacts with Tennessee that allow him to be hailed into this Court, including but not limited to his transacting of business in this state, his regular travel to this state, and his membership in Clozetivity, which was formed in and has always operated in Tennessee.

4. Defendant Curt Swanson is resident of the State of New York and can be served with process at 304 Bloomingrove Drive, Troy, New York, 12180. Mr. Swanson is also a member of Clozetivity. This Court has personal jurisdiction over Mr. Swanson because he has sufficient minimum contacts with Tennessee that allow him to be hailed into this Court, including but not limited to his transacting of business in this state, his regular travel to this state, and his membership in Clozetivity, which was formed in and has always operated in Tennessee.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiff and Defendants reside in different states, and the amount in controversy exceeds $75,000. This is an action for rescission of a Franchise Agreement between Plaintiff and Defendant Clozetivity (the "Franchise Agreement") and a Guaranty and Non-Compete Agreement (the "Guaranty") due to fraudulent inducement and for restitution damages. Copies of the Franchise Agreement and the Guaranty are attached as <u>Exhibits 2 and 3</u>, respectively. Plaintiff seeks restitution damages in an amount not less than $31,200. The

2

Case 3:22-cv-00772   Document 1   Filed 10/02/22   Page 2 of 19 PageID #: 2

royalties due and owing under the remaining term of the Franchise Agreement exceed $75,000 by themselves.

6. Venue is proper under 28 U.S.C.A. §§ 1391(b) and 1400(a).

7. To the extent that the forum selection provision of the Franchise Agreement applies, Section 17.5 provides that the forum for any dispute shall be the federal district court, or if there is no federal jurisdiction over the dispute, the state court of record in the county and state where Clozetivity's headquarters is located. Clozetivity's headquarters is and has always been in Davidson County, Tennessee. Further, the Franchise Disclosure Document (FDD) provided by Defendant Clozetivity to Plaintiff in connection with Plaintiff's franchise purchase, as required by federal law, provides that "[t]he franchise agreement requires you to resolve disputes with the franchisor by mediation, arbitration and/or litigation only in Tennessee." An excerpt of the FDD is attached as <u>Exhibit 4</u>.

## II. FACTS

8. Clozetivity is in the business of selling and supporting independently owned franchised businesses that operate under the Clozetivity brand, trademarks, and allegedly proprietary system of operations. A franchisee of Clozetivity provides customized closet and storage solutions in a territory designed by Clozetivity.

9. The sale of franchises in the United States is regulated by the Federal Trade Commission (FTC). The FTC's trade regulation rule governing the sale of franchises has been labeled by the FTC and is commonly known as the "Franchise Rule."

10.     One of the primary reasons for the creation of the Franchise Rule was to combat the widespread use of misrepresentations and failure to disclose material facts by franchisors in connection with the sale of franchises.

11.     The Franchise Rule requires a franchisor to provide a prospective franchisee with certain disclosures, contained in a written Franchise Disclosure Document ("FDD"), prior to the purchase of the franchise. The Franchise Rule refers to these required disclosures as "Disclosure Items," and the Rule enumerates several items of required disclosure in 16 C.F.R. 436.5.

12.     Under <u>Item 2: Business Experience</u>, the franchisor is required to disclose the name and position of the franchisor's directors, trustees, general partners, principal officers, and any other individuals who will have management responsibility relating to the sale or operation of franchises (the "Franchisor Principals").

13.      Under <u>Item 3: Litigation</u>, ("Item 3"), a franchisor must disclose whether the franchisor, the franchisor's predecessors, or the Franchisor Principals, among others:

(a)     has pending against that person an administrative, criminal, or material civil action alleging a violation of a franchise, antitrust, or securities law, or alleging fraud, unfair or deceptive practices, or comparable allegations;

(b)     has pending against that person civil actions, other than ordinary routine litigation incidental to the business, which are material in the context of the number of franchisees and the size, nature, or financial condition of the franchise system or its business operations;

(c) was a party to any material civil action involving the franchise relationship in the last fiscal year;

(d) Has in the 10-year period immediately before the disclosure document's issuance date:

(1) been convicted of or pleaded nolo contendere to a felony charge;

(2) been held liable in a civil action involving an alleged violation of a franchise, antitrust, or securities law, or involving allegations of fraud, unfair or deceptive practices, or comparable allegations;

(3) is subject to a currently effective injunctive or restrictive order or decree resulting from a pending or concluded action brought by a public agency and relating to the franchise or to a Federal, State, or Canadian franchise, securities, antitrust, trade regulation, or trade practice law.

14. For each litigation matter disclosed under Item 3, the disclosure must state the title, case number or citation, the initial filing date, the names of the parties, the forum, the relationship of the opposing party to the franchisor and a summary of the legal and factual nature of each claim in the action, the relief sought or obtained, and any conclusions of law or fact. Additionally, the disclosure must state: for pending actions, the status of the action; for prior actions, the date when the judgment was entered and any damages or settlement terms; for injunctive or restrictive orders, the nature, terms, and conditions of the order or decree; and for convictions or pleas, the crime or violation, the date of conviction, and the sentence or penalty imposed.

15. A franchisor's FDD must be updated annually within 120 days of the close of the franchisor's fiscal year, and Material changes to a franchisor's disclosures in between annual updates must be completed within a reasonable period of time after the close of each fiscal quarter. If a franchisor fails to update the FDD within 120 days' of the close of its fiscal year, and quarterly if necessary, it cannot complete franchise sales without an applicable exemption.

16. Mr. Goldberger and Mr. Swanson are both Franchisor Principals with respect to Clozetivity, and thus Clozetivity was required by the Franchise Rule to disclose facts required by Item 3 for which either Mr. Goldberger or Mr. Swanson was a party.

17. Both Mr. Goldberger and Mr. Swanson were defendants *Borgen v. Patch Boys Franchising, LLC, Leiby Goldberger, Curtis Swanson, and William Weber*, No. 0:20-cv-02364-MJD-JFD, United States District Court for the District of Minnesota (the "Borgen Case").

18. The Borgen case was filed on November 20, 2020 and was closed on January 12, 2022.

19. The complaint in the Borgen Case, which is attached as <u>Exhibit 5</u>, alleges, *inter alia*, that Mr. Goldberger made numerous misrepresentations, both inside and outside the FDD, in connection with the sale of a franchise on behalf of Patch Boys Franchising, LLC ("Patch Boys"), a franchising company that was formerly owned by Mr. Goldberger and Mr. Swanson. The plaintiff in the Borgen Case alleged causes of action involving fraud, unfair and deceptive trade practices, and violations of franchise law. Specifically, the plaintiff in the Borgen Case brought claims against Patch Boys, Mr. Goldberger, and

Mr. Swanson for violation of the Minnesota Franchise Act for fraudulent registration of a franchise and fraudulent representations, as well as a claim for common law fraud.

20. Both Mr. Goldberger and Mr. Swanson were defendants in *Anderson v. Patch Boys Franchising, LLC, Leiby Goldberger, Curtis Swanson, and William Weber*, No. 0:19-cv-03119-JRT-DTS, United States District Court for the District of Minnesota (the "Anderson Case").

21. The Anderson Case was filed on December 19, 2019. It was closed on December 20, 2020.

22. The Complaint in the Anderson Case, which is attached as Exhibit 6, also alleges that Mr. Goldberger made numerous fraudulent representations to a prospective franchisee on behalf of Patch Boys. The plaintiff in the Anderson Case asserted the same causes of action that had been asserted in the Borgen Case, involving fraud, unfair and deceptive trade practices, and violations of franchise law.

23. Mr. Goldberger was a defendant in *Reliable Check Cashing Corp. v. Banco Popular, Supreme Interior Management, Inc. and Leiby Goldberger*, No 11726/09, Supreme Court, King's County, New York (the "Reliable Case").

24. As reflected in the Opinion granting the plaintiff's motion for summary judgment, which is attached as Exhibit 7, Mr. Goldberger was sued for cashing $83,000 in bad checks. The co-defendant, Mr. Goldberger's bank, asserted as an affirmative defense that Mr. Goldberger "had fraudulently induced the issuance of the cashier's checks and did not act in good faith and cashing these checks." In the Opinion, the court begins its

7

Case 3:22-cv-00772    Document 1    Filed 10/02/22    Page 7 of 19 PageID #: 7

discussion of the case by stating that "[i]t is undisputed that Banco Popular was defrauded by Goldberger and Supreme Interior Management [Mr. Goldberger's company]."

25. The Reliable Case was filed on April 22, 2009. At some point prior to November 27, 2012, default judgment was entered against Mr. Goldberger. On information and belief, that judgment would not have become final until no sooner than November 27, 2012.

26. On July 30, 2021 in the matter styled *In the Matter of Patch Boys Franchising, LLC, a Delaware Limited Liability Company,* State of Minnesota Department of Commerce File No. 54957*,* Patch Boys Franchising, LLC and Leiby (Leo) Goldberger as principal entered into a Consent Order (the "Minnesota Consent Order") with the Commissioner of the Minnesota Department of Commerce whereby Patch Boys and Goldberger acknowledged that they violated the Minnesota Franchise Act, MN Stat. 80C.01 *et seq*, by selling unregistered, non-exempt franchises in Minnesota, agreed to pay a civil penalty in the amount of $7,500, agreed to refrain from violating any laws, rule or orders in Minnesota, including the Minnesota Franchise Act, and would not sell franchises in Minnesota until the Patch Boys' FDD was registered. The Minnesota Consent Order is attached as Exhibit 8.

27. In 1999, Mr. Goldberger pled guilty in federal court to two counts of credit card fraud and one count of conspiracy to commit credit card fraud pursuant to 18 U.S.C. § 1029. The charges to which Mr. Goldberger pled guilty were felonies.

28. In September 2016 in the matter styled *In the Matter of Investigation by Eric T. Scheniderman, Attorney General of the State of New York, of Patch Boys Franchising,*

*LLC. and Leiby Goldberer, a/k/a Leo Goldberger*, the Office of the Attorney General of the State of New York and Patch Boys Franchising, LLC and Leiby Goldberger entered into an Assurance and Discontinuance Pursuant to Executive Law § 63(12) (the "New York Assurance and Discontinuance"), wherein Patch Boys and Goldberger acknowledged that they sold franchises without disclosing Goldberger's 1999 felony conviction in Patch Boys' FDD, as required by New York law, and agreed to pay a $10,000 fine, offer rescission to its existing franchisees in New York, comply with the provisions of the New York Sales Act, and not to sell franchises in New York within or from New York without a current registration or exemption.

29. In connection with the prospective purchase, Clozetivity provided Plaintiff B&P with the FDD dated June 25, 2021. An excerpt of the FDD is attached as Exhibit 4.

30. Clozetivity was required to disclose the Borgen Case in the FDD.

31. Clozetivity, Mr. Goldberger, and Mr. Swanson knew that Defendant was required to disclose the Borgen Case in the FDD.

32. Clozetivity was required to disclose the Anderson Case in the FDD.

33. Clozetivity, Mr. Goldberger, and Mr. Swanson knew that Defendant was required to disclose the Anderson Case in the FDD.

34. Clozetivity was required to disclose the Reliance Case in the FDD.

35. Clozetivity, Mr. Goldberger, and Mr. Swanson knew that Defendant was required to disclose the Reliance Case in the FDD.

36. Clozetivity was required to disclose the Minnesota Consent Order in the FDD.

37. Clozetivity, Mr. Goldberger, and Mr. Swanson knew that Defendant was required to disclose the Minnesota Consent Order in the FDD.

38. Defendant was required to disclose the New York Assurance and Discontinuance in the FDD.

39. Clozetivity, Mr. Goldberger, and Mr. Swanson knew that Defendant Clozetivity was required to disclose the New York Assurance and Discontinuance in the FDD. Such knowledge is demonstrated by the fact that the New York Assurance and Discontinuance was disclosed in Item 3 of Patch Boys' FDDs with issuance dates of March 18, 2018 and April 12, 2019. Excerpts from these FDDs are attached as Exhibits 9 and 10.

40. Defendants knew that disclosure of the New York Assurance and Discontinuance would reveal Mr. Goldberger's felony fraud convictions. Further, Defendants knew that such a revelation could lead a prospective franchisee that conducted an internet search to discover *United States v. Rutner*, 4 Fed. Appx. 66, 68 (2d Cir. 2001), the opinion from the Second Circuit Court of Appeals in which the district court was ordered to resentence Mr. Goldberger for his felony fraud convictions. In that opinion, which is attached as Exhibit 11, the court stated:

> It is also worth noting that, outside of his relationship with Rabbi Ashkenazi, Goldberger's post-arrest conduct has been the opposite of exemplary. While out on bail, he has been convicted, in the New York state courts, of check kiting. There is also evidence that Goldberger has stolen at least $1,000 in merchandise, and possibly much more, from his employer. While it is not logically impossible for a defendant to engage in repeated criminal conduct after his arrest and still later demonstrate extraordinary acceptance of responsibility, it is highly unlikely.

*United States v. Ruttner*, 4 Fed. Appx. 66, 68 (2d Cir. 2001). Thus, disclosure of the New York Assurance and Discontinuance would have revealed yet another criminal conviction of Mr. Goldberger.

41. Defendants intentionally failed to disclose the Borgen Case, the Anderson Case, the Reliance Case, the Minnesota Consent Order, and the New York Assurance and Discontinuance in the FDD.

42. On information and belief, Defendants intentionally failed to disclose the Borgen Case, the Anderson Case, the Reliance Case, the Minnesota Consent Order, or the New York Assurance and Discontinuance to Clozetivity's legal counsel that drafted the FDD.

43. Instead of disclosing the matters that were required to be disclosed, in Item 3 of the FDD, Defendants falsely represented that "[n]o litigation is required to be disclosed in this item."

44. The *Anderson* case was disclosed by Patch Boys International, LLC, the successor in interest to Patch Boys Franchising, LLC, as part of the predecessor litigation disclosure in Item 3 of its FDDs issued March 31, 2021 and April 1, 2022, excerpts of which are attached as <u>Exhibits 12 and 13</u>.

45. The Minnesota Consent Decree was disclosed in Item 3 of Patch Boys International, LLC's 2022 FDD as part of the predecessor litigation disclosure.

46. There may be other matters of which Plaintiff is unaware that should have been disclosed in Item 3 but were not. To date, Plaintiff is only aware of the items mentioned herein.

47. The failure to disclose the Borgen Case, the Anderson Case, the Reliance Case, the Minnesota Consent Order, or the New York Assurance and Discontinuance was material to any prospective franchisee.

48. In fact, Defendants concealed the Borgen Case, the Anderson Case, the Reliance Case, the Minnesota Consent Order, or the New York Assurance and Discontinuance because they knew that no reasonable person would have purchased a franchise had they known about these things.

49. Plaintiff was unaware of the Borgen Case, the Anderson Case, the Reliance Case, the Minnesota Consent Order, or the New York Assurance and Discontinuance at the time that Plaintiff executed the Franchise Agreement and the Guaranty.

50. Plaintiff B&P reasonably relied on the FDD's misrepresentation that no items were required to be disclosed in Item 3 of the FDD in deciding to execute the Franchise Agreement and the Guaranty.

51. Had B&P known about the Borgen Case, the Anderson Case, the Reliance Case, the Minnesota Consent Order, or the New York Assurance and Discontinuance, B&P would not have executed the Franchise Agreement or the Guaranty.

52. Based on Defendants' misrepresentations, Plaintiff paid $31,200 as a franchise fee. Plaintiff has subsequently paid thousands of dollars in royalties to Clozetivity.

53. The failure to comply with the Franchise Rule is an unfair and deceptive trade practice in violation of Section 5 of the FTC Act.

54. By misrepresenting the past litigation history of Messrs. Goldberg and Swanson, Defendants represented "that a person has a sponsorship approval, status, affiliation or connection that such person does not have," in violation of Tenn. Code Ann. § 47-18-104 (b)(5), and represented that services are of a particular standard or quality, when they were of another, in violation of § 47-18-104 (b)(5).

55. Since Plaintiff executed the Franchise Agreement, the problems that one would expect based on the matters that were concealed from Plaintiff in the FDD have begun to manifest themselves. For example:

(a) Clozetivity has provided little, if any substantial support to its franchisees;

(b). In July 2022, a heated dispute over the management of Clozetivity arose between Messrs. Goldberger and Swanson, on the one hand, and Thomas Scott, the third member of Clozetivity on the other. This dispute led to the exclusion of Mr. Scott from any management of Clozetivity and the removal of him as an officer, as well as litigation between the parties, in which Mr. Scott has made multiple allegations of dishonesty against Messrs. Goldberger and Swanson;

(c) On Sunday, June 19, 2022, Mr. Goldberger terminated Kayla Ryan, the Vice President of Marketing, suddenly and without notice. When he terminated Ms. Ryan, Mr. Goldberger also terminated her email, which automatically canceled the franchisees' prepaid Facebook advertising. Despite the fact that Clozetivity had received thousands of dollars from franchisees for prepaid advertising, Mr. Goldberger was unable or unwilling to rectify this matter. This lead to an immediate

13

cessation of all leads from Facebook ads and a large drop in revenue for owners that used that advertising;

(d) Franchisees are at times not receiving emails when a customer schedules an online appointment, resulting in nobody from the franchisee showing up for the appointment;

(e) The franchisee websites were managed by Brand Journalists, LLC, a company owned in whole or in part by Mr. Scott. Clozetivity, at Mr. Goldberger's direction, failed or refused to pay the annual hosting invoices for the websites, apparently due to the dispute with Mr. Scott. The failure to pay for the hosting services resulted in the websites being inaccessible. Rather than simply paying the hosting services, on information and belief Defendants hacked in to the Brand Journalist server, downloaded copies of the websites and changed the domain names to point to a different server controlled by Defendants. Mr. Goldberger then tried to install the copied websites onto this server. This did not work, resulting in another significant drop in leads for the franchisees. Eventually, Defendants were able to put up working websites, but the new websites have multiple problems. Defendants have done absolutely nothing to correct these problems, despite multiple complaints and suggestions by franchisees;

(f) The management of Defendant, including Messrs. Goldberger and Swanson, has acted so unprofessionally that all support staff has either quit or has been fired for no good reason. For several months, the franchisees have had virtually no administration support, marketing support, financial consulting, business coaching,

14

or really any communication with Clozetivity other than rambling emails sent to all franchise owners. Clozetivity now only has one support staff, who is supposed to be providing support for the franchisees of at least four separate franchise systems but is in reality able to offer very little, if any, useful support;

(g) two employees or former employees have filed EEOC complaints;

(h) The online store for branded products has disappeared; and

(i) Messrs. Goldberger and Swanson will not take calls from the franchisees and do not return phone messages.

56. In addition to the franchise fee and royalties, Plaintiff has invested substantial money and time in the franchise. The business idea behind the franchise is sound. Plaintiff would nevertheless never have purchased the franchise has Plaintiff known of the matters that Defendants concealed from Plaintiff, and Plaintiff should not be required to continue in business as a franchisee of Clozetivity. Plaintiff is suffering or will suffer immediate and irreparable injury if Plaintiff is required to stay in the Clozetivity franchise system or if Clozetivity is entitled to enforce the non-competition and other provisions of the Franchise Agreement or otherwise interfere with Plaintiff's business. Further, Plaintiff is currently paying royalties based on a contract that is clearly unenforceable due to fraud. Given the character of the Defendants, the numerous claims being made by other franchisees, and the other litigation in which Defendants are involved, there is little chance that Plaintiff will be able to recover these fees.

## III. CAUSES OF ACTION

### COUNT ONE

### FRAUDULENT INDUCEMENT

57. Plaintiff hereby incorporates all preceding allegations.

58. The statement by Clozetivity in Item 3 of the FDD that "[n]o litigation is required to be disclosed in this item" is an intentional misrepresentation of an existing fact material to the purchase of franchise by Plaintiff from Clozetivity.

59. Plaintiff reasonably relied on this misrepresentation in deciding to purchase a franchise and execute the Franchise Agreement and the Guaranty and suffered injury as a result of this reliance.

60. Plaintiff is entitled to a recission of the Franchise Agreement, the Guaranty, and any other contracts or agreements between Plaintiff and Defendant Clozetivity related to Plaintiff's purchase of the franchise.

61. Plaintiff is also entitled to restitution in at least the amount of the franchise fee.

62. Mr. Goldberger and Mr. Swanson directly participated in the fraud perpetrated by Clozetivity and are thus jointly and severally liable with Clozetivity.

### COUNT TWO

### FRAUDULENT INDUCEMENT BY CONCEALMENT

63. Plaintiff hereby incorporates all preceding allegations.

64. Defendant Clozetivity was under a legal duty disclose the Borgen Case, the Anderson Case, the Reliance Case, the Minnesota Consent Order, and the New York Assurance and Discontinuance to Plaintiff in the FDD.

65. Clozetivity intentionally concealed from Plaintiff the Borgen Case, the Anderson Case, the Reliance Case, the Minnesota Consent Order, and the New York Assurance and Discontinuance by failing to disclose these items in the FDD.

66. Plaintiff reasonably relied on this concealment in deciding to purchase a franchise and execute the Franchise Agreement and the Guaranty and suffered injury as a result of this reliance.

67. Plaintiff is entitled to a recission of the Franchise Agreement, the Guaranty, and any other contracts or agreements between Plaintiff and Clozetivity related to Plaintiff's purchase of the franchise.

68. Plaintiff is also entitled to restitution in at least the amount of the franchise fee.

69. Mr. Goldberger and Mr. Swanson directly participated in the fraud perpetrated by Clozetivity and are thus jointly and severally liable with Clozetivity.

## COUNT THREE

## INJUNCTIVE RELIEF

70. Plaintiff hereby incorporates all preceding allegations.

71. The proof regarding Plaintiff's claim that Clozetivity intentionally misrepresented that there were no matters to disclose under Item 3 of the FDD is incontrovertible and based entirely on the public record and documents created by

17

Case 3:22-cv-00772   Document 1   Filed 10/02/22   Page 17 of 19 PageID #: 17

Clozetivity. There is a very strong likelihood of success on the merits of Plaintiff's claim for fraudulent inducement and thus a strong likelihood that the Franchise Agreement and the Guaranty will be rescinded.

72. Plaintiff has invested substantial money and time in the franchise. The business idea behind the franchise is sound. Plaintiff would nevertheless never have purchased the franchise had Plaintiff known of the matters that Defendants concealed from Plaintiff, and Plaintiff should not be required to continue in business as a franchisee of Clozetivity. Plaintiff is suffering or will suffer immediate and irreparable injury if Plaintiff is required to stay in the Clozetivity franchise system or if Clozetivity is entitled to enforce the non-competition and other provisions of the Franchise Agreement or otherwise interfere with Plaintiff's business. Further, Plaintiff is currently paying royalties based on a contract that is clearly unenforceable due to fraud. Given the character of the Defendants, the numerous claims being made by other franchisees, and the other litigation in which Defendants are involved, there is little chance that Plaintiff will be able to recover these fees.

73. Plaintiff is entitled to a temporary and permanent injunction that: (a) enjoins and restrains Defendants from enforcing the non-competition and other provisions of the Franchise Agreement and Guaranty; (b) enjoins and restrains Defendants from collecting royalties; (c) enjoins and restrains Defendants from interfering with Plaintiffs' business; (d) enjoins and restrains Defendants from communicating with Plaintiffs for any purpose; and (e) requires Clozetivity to sustain Plaintiff's access to email accounts and CRM platforms for sufficient time to allow Plaintiff to transition away from the franchise system.

74. Further, the Court should also enter a temporary and permanent injunction pursuant to Tenn. Code Ann. § 47-18-109(b) enjoining and restraining Defendants from selling any further franchises unless and until Clozetivity's FDD is amended to disclose all matters required to be disclosed under Item 3 of the Franchise Rule, including this lawsuit.

## IV. PRAYER FOR RELIEF

Premises considered, Plaintiff respectfully requests the Court to award Plaintiff the following relief:

a. Enter a judgment rescinding the Franchise Agreement, the Guaranty, and all related contracts and agreements;

b. Award restitution to Plaintiff, jointly and severally against all Defendants, in an amount to be determined at trial, but not less than $56,200;

c. Award Plaintiff reasonable attorneys fees and expenses;

d. Assess costs against Defendants.

Respectfully Submitted,

s/ *Gregory H. Oakley*
Gregory H. Oakley, BPR #16237
4300 Sidco Dr., Suite 200Nashville, TN 37204
Ph 615-369-9996
Fx 615-515-4491
Email greg@build.law

*Attorneys for Plaintiff*